## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

LIONEL FRANKLIN,         )
                            )    09 C 5307
        Plaintiff,    )
                            )
    v.                   )    Hon. Charles R. Norgle
                            )
CCB CREDIT SERVICES, INC.,    )
                            )
        Defendant.    )

## OPINION AND ORDER

Charles R. Norgle, District Judge

      Before the Court are the parties' cross-motions for partial summary judgment. For the following reasons, each party's motion is granted in part and denied in part.

## I. BACKGROUND

### A. Facts [1]

      Plaintiff Lionel Franklin ("Franklin") took classes in fall 2008 at Prairie State College ("PSC") but did not pay his $497 tuition bill on time. PSC sent Franklin two letters, three weeks apart, explaining that if his bill went to collections Franklin would be charged a 33% fee on his $497 tuition balance. Franklin's original agreement, executed when he enrolled at PSC in 2001, "authorize[d] the Business Office to collect any and all fees associated with my account." Franklin did not pay, the bill defaulted, and PSC sent the account to Defendant CCB Credit Services, Inc. ("CCB"). Three weeks after the final PSC letter, CCB sent Franklin a May 8, 2009 letter (the "Letter") demanding payment of $661. Consistent with the PSC letters'

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements and notes disputed facts within the text.

warnings, the $661 represents the $497 tuition bill plus 33% of $497, or $164.[2]  When Franklin received CCB's letter, he called CCB to dispute the $164 default fee.  The parties dispute what happened next.

According to Franklin, A CCB employee told Franklin on May 14 (or 15) that he may dispute the $164 fee but would probably lose the dispute because Franklin registered at PSC, went to class at PSC, and owed the debt.  Franklin paid the $661 debt on July 31, 2009, because otherwise PSC would not let him resume classes.  Around this time, CCB communicated information about Franklin's debt to credit bureaus Experian and TransUnion.  CCB failed to tell the credit bureaus that Franklin wished to dispute the $164 portion of the debt.[3]

In CCB's version, its phone operator knew Franklin wished to dispute the debt and merely informed Franklin of the possibility he could lose.  The operator tried to flag Franklin's account to avoid any reports to credit bureaus because CCB's policy is to not report accounts that consumers dispute.  But an errant keystroke by the operator exposed Franklin's account to credit bureaus.  The mistake occurred even though the operator received both computer and phone training and could consult a supervisor if novel scenarios arose.  Flagging is accomplished by hitting the "F2" button on the computer keyboard.  CCB does not expressly explain why this did not happen.  CCB merely notes that a slip of the finger into either the immediately adjacent "F1" or "F3" buttons will not flag the account.  CCB points out that hitting any of the three keys results in the same final screen.  As a result, an operator does not immediately know whether the flag worked.  It failed Franklin, and CCB reported Franklin's debt as undisputed.

---

[2] The precise sums are $497.50, $164.18, and $661.68.  Round numbers are used for ease of discussion.

[3] The parties report that although TransUnion treats a disputed debt less negatively for purposes of a credit score than a debt reported undisputed, Experian treats a disputed debt the same as a debt reported undisputed.

2

It is undisputed that Franklin received at least five debt collection letters, four from PSC,[4]

one from CCB. He received them over a period of five months and one week. PSC sent

Franklin two account statements between December 31, 2008, and March 20, 2009, regarding his

$497 bill. When Franklin did not pay, PSC sent two letters, dated March 26, 2009, and April 19,

2009. In part, PSC's March 26, 2009 letter states:

> If you have not paid your outstanding balance in full or set up a payment plan . . .,
> you will receive a final letter notifying you that your account is being sent to a
> collection agency. *To recover the College's administrative costs for processing
> and collecting this debt, an additional 33% of the outstanding balance will be
> added to the amount submitted to collection.*

(emphasis added). Similarly, PSC's April 19, 2009 letter states in part:

> Your account will be sent to a collection agency if you have not paid your
> outstanding balance of $497.50 in full or set up a payment plan . . . . *The amount
> sent to collection will include an additional 33% of the outstanding balance to
> cover administrative costs for processing and collecting this debt.*

(emphasis added). Nineteen days after the second PSC letter threatening Franklin with a 33%

markup on his $497 tuition bill, CCB in a May 8, 2009 letter presented Franklin with the $661

figure. In relevant part, the CCB letter states:

| | | |
|---|---|---|
| Date: May 8, 2009 | Amount: | $661.68 |
| Account No: 0242534 | Various Other Accounts: | $ 0.00 |
| File #: TA2264 | Other Charges: | $ 0.00 |
| Creditor: Prairie State College | **Total Amount Due:** | $661.68 |

> This account has been placed with this office for collection. Kindly submit your
> payment for the above balance in order that we can advise your creditor that this
> account has been paid in full.

When PSC sent Franklin's account to CCB, PSC presented CCB with a breakdown, separating

the $661 total into the $497 tuition bill and the $164 collection fee. As CCB's letter shows, CCB

did not present that breakdown to Franklin in its May 8, 2009 letter.

---

[4] Under FDCPA, a creditor such as PSC may engage in debt collection even if it is not subject to the
statute because it does not fit the definition of a "debt collector." See 15 U.S.C. § 1692a(4), (6).

3

The parties disagree over whether the $164 was a "collection fee" insofar as that term means a fee CCB sought just for itself, as Franklin alleges. However, CCB states, and Franklin does not dispute, that PSC added the 33% fee before sending Franklin's account to CCB. CCB added nothing to the original $661 sum PSC placed with CCB for collection.

The parties mention that Franklin is employed by Horwitz, Horwitz & Associates, Ltd. ("Horwitz"), the law firm that represents Franklin in this case. Franklin has worked for Horwitz for ten years. The record is silent regarding what he does for Horwitz and how much he is paid, but it is not disputed that he has not been a timely bill payer. In that time, Franklin has sued as a plaintiff under the Fair Debt Collection Practices Act ("FDCPA") fourteen times. Horwitz represented Franklin fourteen times. The FDCPA allows sanctions against a plaintiff who sues in bad faith to harass. 15 U.S.C. § 1692k(a)(3). CCB hints at but does not expressly make such allegations here. A wily plaintiff is otherwise irrelevant to the resolution of this motion.

## B. Procedural History

Franklin filed his initial complaint against CCB on August 27, 2009, and his amended complaint September 23, 2010. Franklin alleges CCB's Letter is deceptive on its face in violation of 15 U.S.C. § 1692e, and failed to state the amount of the debt in violation of 15 U.S.C. § 1692g. He alleges CCB's employee violated 15 USC §§ 1692e and 1692g by telling Franklin over the phone that Franklin would likely lose his attempt to dispute the debt. Franklin also claims CCB violated 15 U.S.C. § 1692f because the $164 fee was neither authorized by the original agreement between Franklin and PSC nor permitted by law. Finally, Franklin claims CCB violated 15 U.S.C. § 1692e by reporting Franklin's debt to credit bureaus as undisputed. The parties' cross-motions for partial summary judgment are fully briefed and before the court.

4

## II. DISCUSSION

### A. Standard of Decision

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Hunter v. Amin, 583 F.3d 486, 489 (7th Cir. 2009). The court views the record and draws all reasonable inferences in the light most favorable to the nonmoving party. Zerante v. DeLuca, 555 F.3d 582, 584 (7th Cir. 2009); Hemsworth, II v. Quotesmith.com, Inc., 476 F.3d 487, 490 n.1 (7th Cir. 2007). The court, however, does not "make credibility determinations." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

The court limits its review to the parties' Local Rule 56.1 statements and any properly referenced attached exhibits. See Koszola v. Bd. of Educ. of Chi., 385 F.3d 1104, 1109 (7th Cir. 2004) (district court has discretion on summary judgment to limit factual review to parties' Local Rule 56.1 statements). To survive a motion for summary judgment, "the nonmoving party must identify with reasonable particularity the evidence upon which the party relies." Hemsworth, II, 476 F.3d at 490; Murphy v. ITT Technical Servs., Inc., 176 F.3d 934, 936 (7th Cir. 1999); Cornfield v. Consol. High Sch. Dist. No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993). A movant prevails where the record as a whole demonstrates that "a rational trier of fact could not find for the non-moving party." Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 994 (7th Cir. 2003).

### B. Unsophisticated Debtor Standard

The parties quarrel about the meaning of the hypothetical "unsophisticated debtor," which is the measure of an FDCPA violation. McMillan v. Collection Prof'l, Inc., 455 F.3d 754,

5

758 (7th Cir. 2006). Franklin stresses the unwary debtor is "uninformed." The court agrees this term may describe, euphemistically, the debtor's credulity. But it does not describe the hypothetical debtor's potential store of knowledge. The Seventh Circuit charges the unwary consumer with "a reasonable knowledge of her account's history." Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 646 (7th Cir. 2009). This includes "collection letters," which the unsophisticated debtor reads "carefully so as to be sure of their content." Pettit v. Retrieval Masters Creditor Bureau, Inc., 211 F.3d 1057, 1061 (7th Cir. 2000).

The FDCPA is generally intended to protect consumers from abusive and disruptive debt collection practices. Pettit, 211 F.3d at 1058. Although "uninformed, naive, or trusting," Gammon v. GC Servs. Ltd. P'ship, 27 F.3d 1254, 1257 (7th Cir. 1994), the unwary debtor "possesses rudimentary knowledge about the financial world, *is wise enough to read collection notices with added care*, possesses reasonable intelligence, and is capable of making basic logical deductions and inferences," Pettit, 211 F.3d at 1060 (quotation omitted) (emphasis added). The unsophisticated debtor also employs objective reasonableness. Gammon, 27 F.3d at 1257. As a result, courts will not "entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation" of collection documents, McMillan, 455 F.3d at 758.

The Seventh Circuit regards this standard as nettlesome but necessary. "[M]any unsophisticated consumers would be confused even if the letters they received contained nothing more than a statement of the debt and the statutory notice." DeKoven v. Plaza Assocs., 599 F.3d 578, at 581 (7th Cir. 2010) (quoting Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1060 (7th Cir. 1999)). "Defining the limits of acceptable confusion may tax both the patience and capacity of the courts, but it is essential if there is to be an anti-confusion norm (as opposed to a rule limited to a prohibition of logical contradiction)." Johnson, 169 F.3d at 1061. For example,

6

because the only state of mind at issue is the unwary debtor's, a false statement in a collection letter is not a per se FDCPA violation. "If the average unsophisticated consumer would not be influenced by a statement rightly or wrongly claimed to be literally false, the case should end right there. . . . [A] statement isn't 'false' unless it would confuse the unsophisticated consumer." Muha v. Encore Receivable Mgmt., Inc., 558 F.3d 623, 627 (7th Cir. 2009).[5]

Importantly, "the unsophisticated consumer is not relieved of all responsibility." Barnes v. Advanced Call Ctr. Techs., LLC, 493 F.3d 838, 841 (7th Cir. 2007). The Barnes court illustrated the unsophisticated consumer's comprehension level with a hypothetical $10,000 debt. In the example, a collection letter demanding $200 in exchange for a pledge that "all collection activity will be stopped" could possibly mean the other $1,980 is forgiven. Id. But such a reading would be "bizarre or idiosyncratic," out of step with the unwary consumer standard. Id.; see also Durkin v. Equifax Check Servs., Inc. 406 F.3d 410, 414 (7th Cir. 2005) ("[W]e disregard unrealistic, peculiar, bizarre, and idiosyncratic interpretations of collection letters.").

The unwary consumer is realistic. For example, on remand from the Seventh Circuit, a court in this district charged the unsophisticated consumer with knowledge of the account history beyond communications with the debt collector and the creditor, extending the knowledge to include prior legal matters concerning the account. Turner, 483 F. Supp. 2d at 635. In Turner, the district court imputed the unwary consumer with knowledge of the debtor's bankruptcy that

---

[5] The Seventh Circuit has drafted model language and letters which debt collectors may copy for safe harbor from some FDCPA provisions in certain factual scenarios. See, e.g., DeKoven, 599 F.3d at 579-580; Veach v. Sheeks, 316 F.3d 690, 693-94 (7th Cir. 2003); Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, LLC, 214 F.3d 872, 876 (7th Cir. 2000); Bartlett v. Heibl, 128 F.3d 497 (7th Cir.1997). This facts of this case do not fit any of the tailored safe-harbor letters. See, e.g., Barlett, 128 F.3d at 501 ("We are not certifying our letter as proof against challenges based on other provisions of the statute . . . ."). In any case, the Seventh Circuit has also made it clear that failure to use safe-harbor language does not make a debt collector per se liable. See, e.g., Evory, 505 F.3d at 766.

discharged the debt. Id. The debt collector erroneously had sought to extract it from the plaintiff. Id. The court held that even an unwary debtor would know a debt discharged in bankruptcy is not later payable, regardless of the letter's demand. Id. ("[T]he letter did not imply to a reasonably objective, but unsophisticated consumer, that the debt discharged in bankruptcy was still payable.").

Franklin's version of an "uninformed" consumer, ignorant of the account history, upon opening a letter demanding $661 would indeed be baffled. But so would anyone. Debt collector liability under the FDCPA would be ubiquitous and nearly automatic. Of course, this is not the proper analysis. Instead, the unsophisticated consumer is imputed with knowledge of the account history. See Wahl, 556 F.3d at 646; Turner, 483 F. Supp. 2d at 635. The credulous consumer is not, however, endowed with the actual plaintiff's experiences just because they are the plaintiff's. For example, the standard does not include the adventures of Franklin as a serial FDCPA plaintiff. The hypothetical debtor's knowledge may nevertheless overlap with the actual debtor's. This may include why the debt was incurred and the contents of collection letters, among other things. Accordingly, the letters PSC sent Franklin must be part of the "account history" with which the unwary consumer may be, but not necessarily is, familiar. See Fields 383 F.3d at 562 (unwary consumer may forget about an eight-month-old contract).

## C. Motions for Summary Judgment

Franklin alleges a host of FDCPA violations that boil down to claims arising from four factual scenarios. The first is the Letter that Franklin alleges is misleading on its face. The second is the debt itself, which includes a collection fee allegedly unauthorized by agreement and otherwise illegal. The third is the May 14 (or 15), 2009 telephone conversation in which a CCB employee allegedly discouraged Franklin from exercising his right to dispute the debt. The fourth is that CCB allegedly wrongly reported Franklin's debt to two credit bureaus as undisputed. Franklin moves for a judgment of liability against CCB on statutory grounds. CCB denies these allegations and opposes Franklin's motion, moving this court for summary judgment in its favor.

### 1. *The Letter*

#### A. *Section 1692e*

Franklin asserts that by stating the lump sum of $661 in the "Amount" and "Total Amount Due" columns, rather than itemizing the $164 collection fee in the "Other Charges" line item and the $497 tuition bill in the "Amount" line item, CCB violated 15 U.S.C. § 1692e and § 1692e(10). Section 1692e states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," illustrated by sixteen proscriptions including § 1692e(10), which bans "[t]he use of any false representation of deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

Franklin alleges CCB violated § 1692e both by incorrectly stating the amount of the debt (which he alleges is a separate violation of 15 U.S.C. § 1692g), and also by

failing to itemize the components of the debt—namely, by not breaking out the 33% collection fee from the $497 tuition bill.

Franklin argues the Letter's right-hand column hid the truth and violated the FDCPA because it looked like this:

| Date: May 8, 2009 | Amount: | $661.68 |
| Account No: 0242534 | Various Other Accounts: | $ 0.00 |
| File #: TA2264 | Other Charges: | $ 0.00 |
| Creditor: Prairie State College | **Total Amount Due:** | $661.68 |

According to Franklin, the Letter's right hand-column should have looked like this:

| Date: May 8, 2009 | Amount: | $497.50 |
| Account No: 0242534 | Various Other Accounts: | $ 0.00 |
| File #: TA2264 | Other Charges: | $164.18 |
| Creditor: Prairie State College | **Total Amount Due:** | $661.68 |

Franklin contends this difference, on its face, violates the statute because it fails to state "the amount of the debt" as 15 U.S.C. § 1692g(a)(1) requires. For this argument, Franklin relies primarily on <u>Fields v. Wilbur Law Firm, P.C.</u>, 383 F.3d 562 (7th Cir. 2004), and on <u>Acik v. I.C. System, Inc.</u>, 640 F. Supp. 2d 1019 (N.D. Ill. 2008). These cases concern dunning letters that failed to itemize the components of debts.

In <u>Acik</u>, the plaintiff consumer, who signed a form agreeing to pay all fees, received a dunning letter that itemized the principal and broke out the other fees as a single line item. <u>Acik</u>, 640 F. Supp. 2d at 1022. The <u>Acik</u> letter looked like this:

| Principal: | $200.00 |
| Additional Client Charges: | $ 78.50 |
| Amount Placed for Collection: | $278.50 |
| BALANCE DUE: | $278.50 |

<u>Id.</u> However, the $78.50 "Additional Client Charges" included a $60 collection fee and $18.50 in interest. The district court reasoned that by not itemizing these and instead listing an "amalgamation" of $78.50, the debt collector failed to take the "safe route" of

itemization that the Seventh Circuit suggests in Fields. Id. at 1024. The district court worried that an unsophisticated consumer "would not know why a bill ballooned by 40% in five months" because even if the consumer still had the original form, it would have left the consumer "without notice as to the amount." Id. at 1025. A violation of § 1692e "is based on adequate *notice* and disclosure, not whether the amount being collected is properly owed." Id. (emphasis added). The letter therefore violated § 1692e on its face. Id. at 1026.

In Fields, the plaintiff consumer incurred a $122 bill and eight months later received a dunning letter that failed to itemize anything, merely stating an "account balance" of $388.[6] Fields, 383 F.3d at 563. The original agreement bound the consumer to pay "any and all collection costs and attorney fees." Id. The "account balance" in the dunning letter included $250 in attorney fees, about $16 in collection fees, and interest. Id. The letter did not itemize any of these debt components. Id. The consumer received three more dunning letters over the next three months. Id. Each letter showed just a single sum, the "account balance," only slightly higher each time to reflect interest. Id.

The Seventh Circuit found in Fields that the letter could confuse an unsophisticated consumer, holding that the plaintiff stated an FDCPA claim that survived Rule 12(b)(6). Id. at 566. The court reasoned the dunning letter may confuse an unsophisticated consumer, even one who remembered the original agreement, because the dunning letter did not explain it sought attorneys' fees. Id. The court stated: "An unsophisticated consumer could reasonably wonder why. . . a relatively modest fee for services rendered had tripled in size." Id. The court expressed concerned that an unwary

---

[6] The precise sums are $122.06 and $388.54. Round numbers are used for ease of discussion.

consumer could lose the bill or that relatives might take over payments, such that they forgot the original sum. Id. A debt collector may not leave "the door open for this assumption to be made." Id. The Seventh Circuit recommended that "[o]ne simple way to comply with § 1692e and § 1692f in this regard would be to itemize the various charges that would comprise the total amount of the debt." Id.

However, although Acik and Fields guide this court, they do not control here.

### I. *Fields does not control*

This case departs from Fields two ways. Unlike the debt collector in Fields, CCB was not both adding and collecting a fee in addition to the sum PSC placed for collection. Second, the consumer in Fields was blindsided by a supersized charge hidden in an "account balance" eight months after incurring a debt with no warning the bill would increase at all, let alone triple. In contrast, Franklin received two clear warnings that PSC would hike his bill if it went to collections, the latter one just three weeks before the dunning letter. Not only did PSC warn Franklin the bill would go up, PSC told him exactly how much it would go up.

Of course, these warnings did not come from CCB. They came from PSC, which is not a debt collector under the FDCPA. But it will not do to evacuate the brain of a hypothetical consumer when clear warning is repeated just three weeks before a letter fulfilling that warning *only* because a creditor, not a debt collector as defined by the FDCPA, issued the warning. Indeed, the hypothetical standard means little without knowledge of the debtor's account history, which may include creditor correspondence.

The Fields court recognized that an unwary debtor may well forget information eight months old. But potential memory of creditor information remains part of the

12

unsophisticated consumer standard. Otherwise discussing the sneaky methods deployed in hopes a debtor's memory fails, as the Seventh Circuit did in Fields, is meaningless. 383 F.3d at 566. In this case, the unwary debtor is unlikely to forget, just three weeks later, repeated warnings that his tuition debt would increase if the bill went to collections. In other words, an unsophisticated consumer repeatedly warned a tuition fee would grow by a third if sent to collections could not reasonably wonder three weeks later why a tuition fee grew by a third. This court finds Franklin's proposed interpretation "unrealistic." Durkin, 406 F.3d at 414.

### II. *Acik* does not control

This case departs from Acik on the issue of notice. Unlike the debt collector in Acik who partially itemized the debt, CCB did not break out the $164 collection fee from the $661 total. Franklin contends this shows that CCB violated the FDCPA. The court disagrees. Instead, the itemization issue illustrates the statute's purpose. The FDCPA imposes strict liability to protect consumers. See Bartlett, 128 F.3d at 500 ("[U]nsophisticated debtors . . . are the particular objects of the statute's solicitude."). What a debt collector knew or should have known or done is (almost always) irrelevant. See, e.g., Muha, 558 F.3d at 628 ("[Consumers] don't need protection against false statements that are immaterial in the sense that they would not influence a consumer's decision . . . .").

What matters is what an unsophisticated consumer would know. As the Acik court explained, a violation of § 1692e "is based on adequate notice and disclosure." 640 F. Supp. 2d at 1025. If an unwary consumer would be on adequate notice of the nature of a debt upon opening a dunning letter, even a debt collector who intended to pull a fast

one—by not itemizing, for example—does not violate the FDCPA because the debt collector's intent is "immaterial." Muha, 558 F.3d at 628.

Moreover, the Seventh Circuit explains that the FDCPA should not be read to "place debt collectors on a razor's edge." Chuway v. Nat'l Action Fin. Servs., Inc., 362 F.3d 944, 949 (7th Cir. 2004). Itemizing the components of a debt offers a safe harbor from § 1692e (and § 1692f). Fields, 383 F.3d at 566. But failing to itemize is not a per se violation. A defendant who provides too much information risks liability too, and so stopping short of itemizing can satisfy § 1692e. See Wahl, 556 F.3d at 646 ("[The debt collector] could have elected to go a step further, disclosing the components of the debt . . . but it wasn't a matter of compulsion.").

Here, CCB did not itemize the assorted fees PSC included in the $661, whether for a collection fee or, say, a calculus class. Because of the repeated, recent notice from PSC to Franklin about the nature of the debt, CCB did not need to itemize anything. Because an unsophisticated consumer would not be clearly misled given this account history, the court finds no facial violation.

### III. Math and the unsophisticated debtor

However, math for many people is not automatic. Some unsophisticated consumers, unaccustomed to performing anything but the simplest mathematical calculations, would struggle to realize that $497 plus 33% of $497 equals $661. The court finds that there are likely a "substantial number" of such people. Williams v. OSI, Educ. Servs., Inc., 505 F.3d 675, 678 (7th Cir. 2007). The letter is not a facial violation, but nor is it necessarily facially compliant. Cf. Durkin, 406 F.3d at 415 (facial violation sustains summary judgment). The degree of difficulty in performing or recognizing that

33% of $497 equals $164 is just great enough that Franklin need not provide extrinsic evidence to survive summary judgment. As to this issue alone, the court makes no determination on § 1692e liability as a matter of law.

### B. Section 1692g

Franklin argues that CCB failed to accurately provide notice of "the amount of the debt" in violation of 15 U.S.C. § 1692g(a)(1), which states that "a debt collector shall . . . send the consumer a written notice containing . . . the amount of the debt." The Seventh Circuit's test is simple: the "amount of the debt" is the amount sought by the debt collector. Barnes, 493 F.3d at 839. Here, PSC's letters gave notice that the bill would grow 33% if it ended up in collection. An unwary debtor would assume this to mean he faced a bill bigger by a third. Receiving a dunning letter for that very amount obviously avoids a § 1692g violation.

Franklin argues, dubiously, that a challenge to the underlying authorization for the debt means CCB has failed to "state the amount." This would mean debt collectors may not attempt to collect past due accounts until a consumer or a court agrees the money is owed. This would be a bizarre result, and directly at odds with Fields, where the Seventh Circuit explained:

> [W]hen a debtor has contractually agreed to pay attorneys' fees and collection costs, a debt collector may, without a court's permission, state those fees and costs and include that amount in the dunning letter. Doing so does not violate the FDCPA. Indeed, refusing to quantify an amount that the debt collector is trying to collect could be construed as falsely stating the amount of debt.

383 F.3d at 565. Moreover, the defendants in both Acik and Fields complied with the statutory minimum of 1692g(a). Acik, 640 F. Supp. 2d at 1031-32; Fields, 383 F.3d at 565. Summary judgment on § 1692g liability for the Letter is entered in favor of CCB.

15

### 2. The Debt

The FDCPA prohibits collection of a fee beyond the original debt unless (1) the fee is expressly authorized in the agreement creating the debt or (2) the fee is permitted by law. 15 U.S.C. § 1692f-f(1). For the reasons discussed below, the court finds the debt was both authorized by agreement and permitted by law. Summary judgment is entered in favor of CCB on this issue.

#### A. Expressly authorized by contract

CCB argues the fee is "expressly authorized," satisfying § 1692f, because Franklin's 2001 agreement with PSC "authorize[s] the Business Office to collect any and all fees associated with my account." Franklin contends the language "any and all fees" is so vague as to "expressly authorize" either nothing at all or the carte blanche imposition of mammoth fees.

The court agrees with CCB. Authorization may be express without being acutely specific. See Rizzo v. Pierce & Assocs., 351 F.3d 791, 794 (7th Cir. 2003). In Rizzo, the Seventh Circuit held that a mortgage note expressly requiring a debtor to pay "all sums" and "costs and expenses" complied with 15 U.S.C. § 1692f. Id. at 792. "The terms of the note and mortgage explicitly require payment of all sums which would then be due . . . ." Id. at 794. The exact amounts owed in Rizzo were not expressly stated in the original agreement. Nor were they here. It is enough that the agreement put Franklin on notice that he was on the hook if PSC had to "collect any and all fees" because of his account's status. Cf. Acik, 640 F. Supp. 2d at 1025 (notice to the debtor is the key factor).

Moreover, in Fields the Seventh Circuit found an agreement that states, "I agree to pay any and all collection costs," clearly authorizes a collection fee. 383 F.3d at 565.

As discussed, the Fields court rejected the notion that such an open-ended collection fee provision left a debt collector helpless to collect a fee of a specific amount short of obtaining judicial permission. Id. at 564. "Plainly stated, the statute does not require such an extraordinary result" and "[n]or . . . does our case law." Id. In this case, PSC was authorized to add the 33% fee and CCB was authorized to attempt to collect it. Whether Franklin is entitled to dispute the amount is another matter, and Franklin raises it in turn.

Finally, the court notes that Franklin's otherwise errant contention—that "to collect any and all fees" would accord debt collectors plenary power—is correct to the extent the language is cabined to debt collection purposes. CCB, for its part, attacks Franklin's interpretation as so broad as to rule out PSC's right to collect even the original tuition bill. CCB is wrong, too. It is axiomatic that courts give effect to contractual language so as not to render it meaningless. Here, the original agreement uses the term "to collect." The court and an unsophisticated debtor alike will understand this to refer to debt collection. The original agreement between Franklin and PSC authorized the collection fee CCB sought to collect.

### B. Permitted by law

CCB argues that, even if the fee is not expressly authorized, Illinois state law permits the $164 fee under the Illinois Collection Agency Act ("ICAA"). In an abundance of caution, despite finding the debt authorized by agreement, the court considers this alternate route to FDCPA compliance. CCB reads the ICAA to carve an exception out of conduct that otherwise triggers liability for:

> [c]ollecting or attempting to collect any interest or other charge or fee in excess of the actual debt or claim unless such interest or other charge or

17

fee is expressly authorized by the agreement creating the debt or claim unless expressly authorized by law or unless in a commercial transaction such interest or other charge or fee is expressly authorized in a subsequent agreement. If a contingency or hourly fee arrangement (i) is established under an agreement between a collection agency and a creditor to collect a debt and (ii) is paid by a debtor pursuant to a contract between the debtor and the creditor, *then that fee arrangement does not violate this Section* unless the fee is unreasonable. The Department shall determine what constitutes a reasonable collection fee.

225 ILCS 425/9a(29) (emphasis added). CCB argues this means its $164 fee, subject to a reasonableness determination, is permitted by law. Franklin contends that a fee arrangement that complies with the second sentence of 225 ILCS 425/9a(29) must also comply with the first sentence, which requires that the fee be "expressly authorized by the agreement creating the debt or claim unless expressly authorized by law."

One court in this district agrees with Franklin. See Acik, 640 F. Supp. 2d. at 1027. In Acik, the court found a fee arrangement under 225 ILCS 425/9a(29) had four requirements: (1) "it must be expressly authorized by the agreement creating the debt"; (2) it "must be established under agreement between" collector and creditor; (3) "the fee must be owed by [the debtor] pursuant to a contract between" the collector and creditor; and (4) the fee must be reasonable. Id. The court in Acik reasoned that because it had already found that the fee was not expressly authorized by the agreement creating the debt, which the court counted as a requirement here, the fee arrangement was not "permitted by law" under ICAA. Id.

The courts discerns a better reading of 225 ILCS 425/9a(29). The language in the first sentence creates three disjunctive scenarios for avoiding liability. It makes a debt collector liable for attempting to collect an extra fee (1) "unless such interest or other charge or fee is expressly authorized by the agreement creating the debt or claim," (2)

"unless authorized by law," or (3) "unless in a commercial transaction such interest or other charge or fee is expressly authorized in a subsequent agreement." The statute then creates a fourth category for reasonable fees that arise from fee arrangements between creditors and debt collectors, and maps out compliance.

Franklin and Acik suggest the fee arrangement safe harbor is not a fourth disjunctive scenario but rather one that must also comply with the first disjunctive shelter, "expressly authorized by the agreement creating the debt." The fourth shelter describes a *payment* "pursuant" to a contract, but that is not a *fee* that is "expressly authorized." In fact, nothing in the statute suggests the interpretation Acik and Franklin propose any more than it suggests the fee must also involve a "commercial transaction." Moreover, the "authorized by the agreement" standard potentially clashes with a standard where the "Department shall determine what constitutes a reasonable fee," 225 ILCS 425/9(a)(29).

Instead, this court reads the fee arrangement safe harbor as an avenue for ICAA compliance that spells out how a fee arrangement may comply with the catch-all second scenario, "authorized by law." Here that law is the ICAA, namely 225 ILCS 425/9a(29). Rather than a grafted-on fourth requirement as Acik and Franklin propose, the harbor has just three conjunctive parts. The fee arrangement provision requires (1) an agreement between PSC and CCB, (2) a payment by Franklin to CCB pursuant to that agreement, and (3) the fee payment to be "reasonable." As discussed, the statute reserves the reasonableness determination for the state agency, a standard sharply different from the "authorized by the agreement" standard. The court therefore finds the $164 fee is "permitted by law," since its reasonableness as such is not raised by the parties. There was no violation of 15 U.S.C. § 1692(f) on that basis.

### 3. The Phone Call

Franklin claims CCB's employee violated the FDCPA by discouraging Franklin over the phone from exercising his right to dispute the debt. CCB disagrees. Franklin invokes § 1692g(b): "collection activities and communication . . . may not overshadow or be inconsistent with the disclosure of a consumer's right to dispute the debt . . . ." This tends to means a debt collector is barred from sending multiple notices that muddy or contradict an original validation notice. See Durkin, 406 F.3d at 417. Accordingly, Franklin asserts that the question is whether, between the Letter and the Phone Call, an unsophisticated consumer would be confused regarding the right to dispute the debt.

It is undisputed that the CCB operator's notes from the conversation are (translated from shorthand) as follows: "Consumer said want to dispute because of default fee; told him he can send in but will be found invalid because he did go to class, did register, and owes; he just doesn't agree with the default fee." Franklin contends that the operator telling Franklin the dispute "will be found invalid" facially violates § 1692g(b). The court disagrees. An unsophisticated consumer making his case to a collection agent may be discouraged or confused about whether he will win his dispute. But the right to dispute is not in question. Indeed, to make his case is to dispute the debt.

Franklin might protest that his own words should not be part of the hypothetical consumer analysis. Even in that scenario, Franklin's claim would collapse, since the operator's response, out of context, would be inane. Thus Franklin's words to the operator are part of the unwary debtor's knowledge of the account history. Here, the operator's words contained no "overt misinformation, apparent contradiction, or noticeable lack of clarity." Durkin, 406 F.3d at 418. An unsophisticated consumer

actively exercising his right to dispute a debt would not be confused about that right when a collection agent suggests the consumer may lose. By definition, a "dispute" is adversarial; disputes are won or lost. Plus, the CCB operator expressly told Franklin (in shorthand notes) "he can send in" his dispute. Summary judgment as to claims under § 1692e and § 1692g arising from the phone call is entered in favor of CCB.

### 4. The Credit Bureau Reports

Franklin claims CCB wrongly reported his debt as undisputed to credit bureaus when CCB knew or should have known the debt was disputed. CCB disagrees. In the alternative, CCB argues against liability by invoking the "bona fide error defense" under the FDCPA. The court has already determined Franklin was disputing his debt, which a CCB operator argued with Franklin about and memorialized by noting, "Consumer said want to dispute." The court thus finds CCB knew or should have known Franklin's debt was disputed, making CCB's reports to credit bureaus a violation of § 1692e(8), which outlaws "[c]ommunicating . . . credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." CCB has violated the FDCPA unless it can prove its defense.

Unlike other FDCPA provisions, § 1692k(c) expressly concerns a debt collector's intent. It states that "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c) (entitled "Intent"). The Supreme Court found that this provision offers protection for factual or clerical errors. Jerman v. Carlisle, 130 S.Ct. 1605, 1614-15

(2010). To succeed, a defendant must show a violation "(1) was unintentional, (2) resulted from a bona fide error, and (3) occurred despite the debt collector's maintenance of procedures reasonably adapted to avoid such error." Ruth v. Triumph P'ships, 577 F.3d 790, 803 (7th Cir. 2009).

CCB attempts to prove (1) and (2) by admitting its operator wanted to hit the "F2" button because she believed Franklin wanted to dispute the debt, yet failed to realize her error because she apparently hit one of the "F1" or "F3" buttons, which will not flag an account and, regardless of which of the three buttons is struck, the very same computer screen results. The problem is that CCB uses the lack of (3) to prove (1) and (2). It is because CCB lacks procedures to avoid easily foreseen errors—namely, (a) having the "F2" flag key between two non-flag keys and (b) some kind of confirmation screen assuring an operator no error occurred—that the good faith clerical mistake occurred. Thus, in attempting to prove (1) and (2), CCB rules out (3). All three elements are required to sustain the defense. Ruth, 577 F.3d at 803. Because the third element is absent, the defense fails. Summary judgment is entered in favor of Franklin on this issue.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is granted as to liability only for the credit bureau reporting violation under 15 U.S.C. § 1692e(8). Plaintiff's claim as to the Letter under § 1692e and § 1692e(10), relating to an unsophisticated debtor's math skills only, has not proved a facial violation, but need not provide extrinsic evidence and so shall proceed past summary judgment. Plaintiff's motion is otherwise denied. Defendant's Motion for Summary Judgment is denied as to Plaintiff's credit bureau reporting violation claim under 15 U.S.C. § 1692e(8) and as to

Plaintiff's claim regarding the Letter under § 1692e and § 1692e(10) concerning an unsophisticated debtor's math skills. Defendant's motion is otherwise granted.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: 6-15-11